# SUPREME COURT.

## In the matter of the Petition of Margaret R. Bull for the Sale of Lots on Eighteenth Street, &c.

A *purchaser* of real estate at a public sale will not be released by the court from his purchase upon the ground,

1st. That a party who it is alleged has an interest in the property was not made a party to the proceedings for the sale, where it is offered on the hearing of the application, to furnish a *release* of all the interest of such party in the premises.

2d. That certain *heirs at law* having, as alleged, an interest in the property under the will of the testator, had not been made parties to the proceedings for the sale, where it appeared from the will that the income of the property was given to M. (a daughter) for life, and after her death without issue, to go to his son J. in fee, and he having died before M., leaving a will disposing of his property to his minor children:

*Held*, that these minor children of J. could not be necessary parties to the proceedings for the sale, as they had no interest in the property; J., their father, having no interest therein which he could dispose of by will until the death of M., who was then alive.

3d. That *two only of the three executors* had executed the conveyance, where it appeared that the three executors named in the will had qualified, but one of them soon afterwards left the United States, and was removed from the office of executor by the surrogate, but had since returned to the United States, and declined to unite in the conveyance:

*Held*, that where a trustee resigns or is discharged from his office, the remaining trustees are vested with the entire estate; and the same rule would seem to apply to the removal of an executor by the *surrogate*. The power he obtains to execute the trust is given to him not by name but as *executor*, and when removed as executor his relation to the estate ceases.

But in this case, the sale of the property was not made by the authority contained in the will, but under and by virtue of the statute—acts of 1864 and 1865. The legislature had power to authorize the sale to be made by any officer of the court, or in such manner as the court should direct; and also had power to direct who should execute the conveyance. This they did when they directed that the conveyance should be executed by the *said trustees;* and that the notice be served on the *two acting executors by name;* the other executor having been removed and having ceased to act long before the passage of either act.

*New York General Term, November*, 1865.

*Before* INGRAHAM, *P. J.*, LEONARD *and* BARNARD, *Justices.*

JOHN TONNELE on the 20th day of August, 1846, died seized of the premises in question leaving a last will and testament which was duly admitted to probate by the surrogate of New York.

By this will John Tonnele, after making some specific devises, gave and devised "all the rest and residue of his estate to his executors, thereinafter named upon the several trusts thereinafter mentioned." By said will the said John Tonnele, after the death of his wife, Rebecca, ordered and directed his executors and the survivor and survivors of them to pay over the income of the premises in question to the petitioner during her natural life, and after her death he gave the said premises to her issue, if she should leave any, and if the petitioner should die without issue the said John Tonnele gave and devised a portion of the premises in question to his son John, and the balance of the premises to his daughter Susan, now the wife of Valentine G. Hall. John Tonnele, Jr., the son of the testator, has since died, leaving him surviving the following children : Julia E. Wetmore, Laurent J. Tonnele, Laurencine T. Degan, Adelaide J. Mitchell, Margaret Langinetto, and Eloise Tonnele.

The testator then appointed John Tonnele, Jr., Valentine G. Hall, Francis E. Berger, William Penfold and George Hall his executors. Valentine G. Hall, Francis E. Berger and George Hall only qualified as such executors. . In —— Francis E. Berger having removed from the United States was removed by the surrogate of New York from his office as executor.

The legislature of the state of New York, by an act passed in 1864, and an amendment of the same passed in 1865, empowered the supreme court upon the petition of the petitioner herein, on the proof of a service of a copy of the petition, together with a notice of the time and place of its presentation, on certain persons therein named and upon the general guardian of such said persons as might be infants, to authorize a sale of the premises in question upon

such terms as should be deemed most expedient for the parties in interest.

None of the persons upon whom the act required notice of the application to be given were infants except Eloise Tonnele, who was under twenty-one years of age, and had no father living, and had no testamentary guardian; nor had any guardian ever been appointed for her by the surrogate of any county, but she resided with her mother, who had the custody and control of the infant, and attended to her education and maintenance.

The said act and the amendments thereof provided that upon the confirmation of any sale made by the supreme court that the said trustees, viz : Valentine G. Hall, and George Hall and the petitioner and her husband should execute a conveyance of the premises sold.

Upon such petition such proceedings were had, that on the 14th day of June, 1865, an order was duly entered ordering a sale of the premises in question upon certain terms and conditions, and appointing John T. Hoffman referee to carry the order of the court into effect.

The said referee in pursuance of the directions contained in said order, on the the 18th day of July, 1865, sold a portion of the premises in question to John Anderson, and another portion to Catharine Bradley, both of which purchasers have assigned their bids to John Kerr, who now refuses to complete his purchase upon the ground stated in his petition herein.

> NEWHOUSE & WHELP, attorneys, and
> CHARLES H. VAN BRUNT, counsel for petitioner, Margaret R. Bull.

I. The children of John Tonnele, Jr., deceased, and Susan Hall, wife of Valentine G. Hall, have a contingent remainder in the premises in question.

(a) A vested remainder is defined by Fearne to be one that is so limited to a person in being and ascertained that it is capable of taking effect in possession or enjoyment

in the certain determination of the particular estate, without requiring the concurrence of any collateral contingency.

*(b)* A contingent remainder on the other hand is one that is so limited as not to be capable of taking effect in possession or enjoyment on the certain determination of the particular estate without the concurrence of some collateral contingency (*Fearne on Remainders, vol.* 2, § 173, 174).

*(c)* The non-existence in a vested remainder and the existence in a contingent remainder of a contingency, irrespective of its own duration, on which the possession or enjoyment strictly depends, is that which constitutes the fundamental distinction between them. (*Fearne, vol.* 2, § 177.)

*(d)* A remainder is vested when it is certain of ultimately taking effect in possession or enjoyment if only it endures beyond the preceding estate (*Fearne, vol.* 2, § 182).

In the present case neither Susan Hall nor the children of John Tonnele become entitled to the enjoyment of any part of the premises in question upon the death of the petitioner, unless she die without issue, and it depends upon the happening of that contingency, viz : her dying without issue, whether Susan Hall or the children of John Tonnele, even if they survive the petitioner, will be entitled to any interest in the premises.

Thus under the common law Susan Hall and the children of John Tonnele would have a contingent remainder in the premises in question.

The Revised Statutes of this state define a remainder to be vested, when there is a person in being who would have an immediate right to the possession of the lands upon the ceasing of the intermediate or precedent estate.

In the case of *Moore* agt. *Lyons* (25 *Wend. p.* 144), the chancellor defined a remainder to be vested when the particular estate is to determine by an event which must unavoidably happen by the effect of time. Provided nothing but the death of the remainder-man before the determina-

tion of the particular estate will prevent such remainder from vesting in possession.

In the case of *Williamson* agt. *Field* (2 *Sand. Ch. R. p.* 552), the vice chancellor gives this definition : "A vested remainder is one by which a present interest passes to the party ; though to be enjoyed in the future and by which the estate is fixed to remain to a determinate person, after the particular estate is spent." He has an immediate fixed right of future enjoyment.

II. The legislature as the sovereign had the power for good and sufficient reasons to authorize and direct the sale of the *cestuis que* trusts and of the person in *esse*, and of those not in *esse* at the time of the passage of the acts (*Leggett* agt. *Hunter*, 19 *N. Y. R. p.* 463).

*(a)* It authorizes a mere change of real estate into personalty. In the case of partition, if persons hold property as tenants in common, which cannot be divided amongst them, any one of them may compel a sale, and thus convert the realty into personalty.

III. It was not necessary for Francis E. Berger to unite in the conveyance.

*(a)* The act of the legislature and the act amendatory thereof empowered the supreme court to authorize a sale of the premises upon the petition of the petitioner herein, and upon proof of service of notice upon Valentine G. Hall and George Hall, executors of John Tonnele, deceased, and upon other persons therein named, and directed that upon the confirmation of the sale a conveyance or conveyances of the same should be executed by the said trustees, and the petitioner and her husband, and further provided that conveyances executed as aforesaid should be valid and effectual to vest in the purchaser, his, her or their heirs or assigns a fee simple absolute.

*(b)* Francis E. Berger had, prior to any of these proceedings, been removed from his office by competent authority, and in the act of the legislature is not mentioned as one of the executors or trustees of John Tonnele.

*(c)* The surrogate has the power under the statute to remove an executor (3 *R. S. 5th ed. p.* 157).

At the time of his removal his duties as executor simply had not ceased. It was only as executors that either Valentine G. Hall, George Hall or Francis E. Berger had any power or control over the estate.

They held the real estate in trust by virtue of their office as executors, and if for any cause their office as executors ceased, being trustees *virtute officii*, their duties as trustees also terminated.

They were liable to account 'for the rents, income and profits of the real estate before the surrogate as executors, independent of the statute (*Stagg* agt. *Jackson*, 1 *Com. R. p.* 211).

. In the present case the trusts and trust powers were confered upon these persons in their character as executors, and in such a case the supreme court could not remove one of the persons from their office as trustee and allow that of executor to remain, or *vice versa ;* and if the surrogate had the power to remove Mr. Berger as executor, his office of trustee no longer remained (*Matter of Wadsworth*, 2 *Barb. Ch. R. p.* 384).

IV. The service of the notice of motion and petition upon the mother of Eloise Tonnele as her guardian, was a compliance with the act of the legislature, and the court acquired jurisdiction by such service.

*(a)* There is no such office known to the statute as general guardian. The phrase has been somewhat loosely used in common practice to distinguish between a person who is appointed a guardian by the court to represent the interests of the infant in a particular action or proceeding, and a person who has the legal right to the custody and care of the infant and the general supervision of its interests.

*(b)* Under the Revised Statutes of this state, where an estate in lands shall become vested in an infant, the guardianship of such infant with the rights, duties and powers of a guardian in socage shall belong,

1st. To the father of the infant.

In the matter of Margaret R. Bull.

2d. If there be no father to the mother.

Such a guardian has the right to the care, custody and control of the infant, and the right to the income and profits of the real estate, and could maintain ejectment in respect to the same (2 *Kent's Com. p.* 222).

In the present case Eloise Tonnele has a vested interest in real estate, and has no father, neither has she any testamentary guardian, nor has any guardian ever been appointed by the surrogate, consequently by the force of the statute above mentioned, her mother is her guardian, and as such guardian she has the charge, custody and maintenance of the infant, and has the right to the income of its real estate.

The mother as guardian having the general control of the infant and its interests, was the general guardian of the infant within the meaning of the statute, and the service upon her was regular.

V. If the court should decide to grant the motion of John Kerr, it should only direct the referee to repay the ten per cent. paid by the assignors of said Kerr.

(a) The referee has no fund out of which he can pay interest, nor out of which he could pay any of the expenses incurred by Mr. Kerr in the investigation of the title herein. The whole legal estate vested in the executors (3 *R. S. p.* 21 § 79).

He received the auction fees for the auctioneer, and they have been paid over by the referee to him, and if he was directed to pay the same, or any part thereof, it would have to be done out of his own fund.

VI. Mr. Justice SUTHERLAND having reconsidered his decision in respect to this application, and having transferred the matter to Mr. Justice INGRAHAM no new notice was necessary.

VII. The motion should be denied.

ROBINSON & SCRIBNER, *attorneys, and*
HAMILTON W. ROBINSON, *counsel for petitioner, John Kerr.*

I. The power of sale conferred by the act of the legislature (*Laws of* 1864, *chap.* 303 *as amended by chap.* 233 *of the Laws of* 1865), can only be carried into effect by a strict compliance with its provisions so as to convey the property of the infants and parties not yet in being.

The deed is a void execution of the power unless executed by all "*the trustees*," as well as by Mrs. Bull and Alfred R. Bull, her husband (*Schuyler* agt. *Marsh*, 37 *Barb.* 350, *and cases cited p.* 356).

Although service of the petition is only required to be made on Valentine G. Hall and George Hall as executors, yet the *deed* must be executed by "*the trustees*" (*see Laws of* 1864 *chap.* 303, *and Laws of* 1865 *chap.* 233).

The estate in the land is still held by Francis E. Berger as one of the trustees under the last will and testament of John Tonnele, Sen., and as joint tenant with Valentine G. and George Hall, the other trustees, during the life of Margaret R. Bull (formerly Tonnele). *Letters testamentary* were issued to all three.

Although Francis E. Berger was in 1860 removed by the surrogate of New York from his office as executor, he has never been removed by the supreme court from his office as trustee and still holds that office.

He could not act as trustee of an express trust in real estate under his nomination as executor without having first taken out letters testamentary (2 *R. S.* 71, § 15, 16.)

A sale of real estate by those who had taken out letters would be good, although the others named in the will and who had not qualified had not joined (*Sharp* agt. *Pratt*, 15 *Wend.* 610; 2 *R. S.* 109 § 55; *King* agt. *Donnelly*, 5 *Paige* 46; *Taylor* agt *Morris*, 1 *Coms.* 349; *Matter of Wadsworth* 2 *Barb. ch.* 381), but all who qualify must join.

The surrogate had no authority to remove Mr. Berger from his office as trustee of the real estate, or divest him of any interest in or power over the land (1 *R. S.* 730 § 69, 70, 71, 72).

The *cestui que trust* would be interested in and a necessary party to any proceeding to remove the trustee. (*Shepherd*

agt. *McIvers*, 4 *John. ch.* 136 ; *Diefendorf* agt. *Spraker*, 6 *Seld.* 246 ; *Roome* agt. *Phillips*, 27 *N. Y. R.* 357.) He may not be in a situation to be represented in the surrogate's court. He may be interested only in the reality, or be a non-resident and amenable only to the process of a court having common law jurisdiction.

The removal of a person as executor by the surrogate, and as trustee by the supreme court, is not co-relative or reciprocal in its operation. (*In the matter of Van Wyck*, 1 *Barb. ch.* 545 ; *Conklin* agt. *Edgerton*, 21 *Wend.* 436.)

II. The necessity for the execution of the deed by all the contingent remainder-men who are adults is evident from the case of *Powers* agt. *Berger*, (2 *Seld.* 358).

III. The motion should be granted and the purchaser discharged with payment of the ten per cent., and his expenses of examining the title to be paid out of the funds in the hands of the referee.

*By the court*, BARNARD, J.    There is no question made but that the legislature had power to pass the acts of 1864 and 1865, under which this petition was presented to the court. The power has for many years been exercised in like cases, and is sustained by the highest authority (*Leggett* agt. *Hunter*, 19 *N. Y. R.* 463). Berger by reason of his removal from the state, was removed as executor by the surrogate of New York. He was trustee because he was an executor, and when he ceased to be executor he ceased to be trustee. But assuming that he was still a trustee, it was competent for the legislature to declare that a deed executed by two of the three trustees, should be sufficient to convey the entire estate. This the act does in terms. It provides for notice to be served on Valentine G. Hall and George Hall, as executors of the deceased John Tonnele, and provides that a conveyance by them shall be sufficient " to vest in the purchaser a fee simple absolute." (*Laws* 1864, *p.* 732 ; *Laws* 1865, *p.* 376.)

Eloise Tonnele, an heir of John Tonnele, is an infant. The act directed a copy of the petition to be served on her

general guardian. This notice was served on her mother, her father being dead and she having no testamentary guardian, and no guardian having been appointed for her by the surrogate.

She resided with her mother, who had the custody and control of the said infant Eloise Tonnele, and attended to her education and maintenance. The mother is by statute the guardian in socage of the infant (*Chap.* 1, *title* 1, *part* 2, *article* 1, *R. S*). This gave the mother " a right to the custody of the infant's land and body " (2 *Black.. Com.* 88).

The service was properly made upon the mother, but this question cannot be made by the purchaser. The court decreed that the service was proper, and granted the sale. A review cannot be had except by a direct appeal. It cannot be questioned collaterally.

The order refusing to release the purchaser from his bid, should be affirmed with costs.

INGRAHAM, P. J. The property sought to be sold is part of the estate of John Tonnele, deceased, and this petition is on behalf of one of the parties interested under the will, for a sale of certain lots belonging to the estate, and such proceedings were had that a sale was ordered by this court. Under that order of sale lots eighty-seven, eighty-eight and eighty-nine, were sold to John Anderson, and lots ninety, ninety-one, ninety-two and ninety-three, to Catharine Bradley. Anderson and Bradley assigned their bids to John Kerr.

Kerr now moves to be released from his purchase, upon the ground that the title is defective for several reasons.

So far as any objection is made to the interest of Mrs. Hall, that was disposed of on the argument by the offer of a release on her part of any interest in the premises. On the supposition that such an instrument will be executed, I shall not examine that objection, leaving to the purchaser the right to renew his motion if the same is not executed.

The only questions which require examination are whether the children of John Tonnele, the son of the testator, are

In the matter of Margaret R. Bull.

necessary parties? Whether Francis E. Berger, one of the executors, must unite in the conveyance to give it validity?

The will gave the income of these lots to Margaret for life, and after her death to her issue, and in case of her death without issue, lots eighty-four to eighty-eight were to go to his son John, and lots eighty-nine to ninety-three, to his daughter Susan, in fee.

The son John has died, leaving a will disposing of his property to minor children, and these children it is urged should be before the court on this application. I think not. John obtained no title to the premises, and could have no interest therein which he could dispose of by will until the death of Margaret without issue, and as she is still living, no interest could pass under his will to his children, and they would not necessarily be parties to this proceeding. They could take no interest under the will because the father had none that he could devise, and they are not entitled to any now as the heirs at law, because as such no estate could vest in them as the heirs of Margaret until her death. There was no ground for making them parties to this application.

The other question is, whether a good title can be given by the executors who are now acting. Three of the executors named in the will qualified, viz.: G. Hall, V. G. Hall and Francis E. Berger.

In 1860 Berger left the United States, and was removed from the office of executor by the surrogate. He has since however returned to the United States, but as I understand, declines to unite in the conveyance.

The statutes of 1864, amended by that of 1865, provide for this application, and authorize the sale of the property. That statute refers to the property as held in trust by the executors of John Tonnelo under the will, and authorizes the court to direct a conveyance of the same to be executed by the *said trustees* and others. The fourth section provides that all such conveyances made as aforesaid, &c., if executed by the trustees as aforesaid, or such persons as may be appointed in his or their place, &c., shall be valid and effectual.

The validity of these statutes and the power of the court thus to dispose of the interest of infants and of persons not *in esse* has been settled by several cases in the court of appeals (*Leggett* agt. *Hunter*, 19 *N. Y. R.* 445), and the right of the executors who qualify to execute the trusts to the exclusion of others who do not qualify is also settled by the same case.

We are brought down then to the sole question whether an executor who has been removed by the surrogate from his office as executor is a necessary party to land to be sold under an act of the legislature, which authorizes a sale to be made by the trustees who held the property under the will at the time of the act.

There can be no doubt if this is a trust but that this court could appoint another trustee in the place of Berger on a proper application (*Roome* agt. *Phillips*, 27 *N. Y. R.* pp. 358, 363).

The will of Tonnele, Sen., gave the executors no authority to sell any of the property excepting such parts of the real estate as he had previously in his will directed to be sold, and no power of sale was given to the executors in regard to any of these lots.

But by a previous provision in the will the testator devised all his estate except some specific legacies and devises to his executors upon the trusts thereinafter named. Under this provision the executors who took upon themselves the execution of the will became vested with the title and might sell the real estate (3 *R. S. 5th ed. p.* 197, § 66).

If at any time an executor becomes incompetent to serve he may be superseded by the surrogate, and the remaining executors would have thereafter the sole administration under the will (3 *R. S. 5th ed. p.* 157).

The revised statutes as to trusts empowers this court to remove trustees and to accept their resignations, and while the court is authorized so to do still it is not obligatory to appoint a new trustee, but may leave the other trustees to execute the trusts or appoint another as may be thought best (3 *R. S. 5th ed.* 22). After the executor had been removed if

such a proceeding had taken place here here there would have been no doubt as to the remaining trustees and executors having full authority to execute the trusts. The court could not remove the executor as such, and the removal of the trustee merely while he was acting as executor might not be sufficient to divest him of the estate which was devised to him as executor (2 *Barb. Ch. R.* 365). A contrary view seems to have been taken by BROWN, J., in the matter of *Crossman* (20 *How. P. R. p.* 350), where a trustee and executor under a will applied to the court to be released from his trusts. In that case the judge says, "the bequest of the will is to all the executors. The effect is to vest the legal title in all the executors, who qualified with the right of survivorship, should either die, become incapable of acting or be removed by the order of the court having jurisdiction;" and again when one trustee resigns or is discharged from his office the remaining trustees are vested with the entire estate.

I am inclined to think the same rule applies to the removal of the executor by the surrogate. His power to act ceases in regard to the will and the administration of the estate. The power he obtains to execute the trust is given to him not by name but as executor, and when removed as executor his relation to the estate ceases.

But I do not think this question necessarily involved in this case. This is not the sale of property authorized by the will and in pursuance of authority conferred thereby, but under and by virtue of the statute. The legislature had power to authorize the sale to be made by any officer of the court or in such manner as the court should direct. So also they had power to direct who should execute the conveyance in the statute. This they did do, when they directed that the conveyance should be executed by the said trustees. We must then see who are the said trustees named in the act. The statute directs notice to be served on Valentine G. Hall and George Hall as executors of John Tonnele, deceased, and states the lands are held in trust by the executors of said Tonnele and then directs the conveyance

to be executed by the said trustees. The intent of these provisions is that the conveyance shall be executed by the then acting executors of Tonnele. Berger had been removed and ceased to be an executor long before the passage of either act. It names the other two executors as the persons upon whom notice is to be served as the only acting executors entitled thereto, it designated the executors (then being such) as holding the land in trust and then directs them the persons so holding the estate to execute the deed.

My conclusion is that both from the removal of Berger as executor before the passage of the statutes and from the provisions of those statutes in which the other executors also are named as such and as holding the trust, that the intent of the legislature was that the deeds should be executed by the acting executors, Valentine and George Hall, and that it is not necessary that Berger should join in the conveyance.

The motion to relieve the purchaser from his purchase is therefore denied.

NOTE.—Subsequent to this decision Francis E. Berger died, and the adult remainder-men all uniting in the conveyance, Mr. Kerr accepted the title and took his deed.

————◆◆————

## SUPREME COURT.