JOSEPH M. L. STRIKER, an Infant over the Age of Fourteen Years, by JOSEPHINE R. STRIKER, His Guardian ad Litem, Appellant, *v.* PHILIP DALY, Respondent.    (Action No. 2.)

First Department, December 29, 1916.

**Executors and administrators — power of surviving executors or trustees to execute power of sale.**

Where power to sell is given to two or more executors or trustees *ratione officii* and one resigns or is removed before the power has been fully executed, the remaining executors or trustees may validly execute the power.

APPEAL by the plaintiff, Joseph M. L. Striker, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of New York on the 19th day of May, 1916, upon the decision of the court after a trial before the court without a jury.

*Samuel M. Richardson,* for the appellant.

*Harold Swain,* for the respondent.

*Edward S. Clinch,* for Fremont M. Jackson.

*Reeves & Todd,* for Edward A. Schnepel and others.

SCOTT, J.:

The action is in ejectment; the facts are undisputed, and but a single question of law is involved.

In 1883 Joseph M. L. Striker died leaving a will which disposed of real and personal property, and which was admitted to probate on July 12, 1883. He gave to his grandmother the income from his estate for life. After her death he gave the income of the estate to his brother, Elsworth L. Striker, for life. Subject to these life estates he gave, devised and bequeathed his whole estate to the legal heirs of his said brother. The last two clauses of his will read as follows: " *Sixth.* I hereby fully authorize and empower my executors hereinafter named to lease, sell and dispose of my real estate as in their judgment will be for the best interest of my estate, and in the event of a

sale by them, either at public or private sale, of any or all of my real estate, they are hereby fully authorized and empowered to deliver good and valid deeds therefor to the purchasers thereof.

" *Lastly.* I hereby nominate and appoint my brother, Elsworth L. Striker, and my friend, George C. Miller, to be the executors of and trustees under this my last will and testament."

Both Elsworth L. Striker and George C. Miller qualified as executors and letters testamentary were issued to them.

On June 28, 1884, the said Miller upon his own petition was permitted to resign as executor and trustee under the above-mentioned will and he was discharged from said office, the letters testamentary theretofore issued to him being revoked. He died in the year 1901.

On February 21, 1888, Elsworth L. Striker, " as sole acting executor of the last will and testament of Joseph M. L. Striker, deceased," for a valuable and adequate consideration, conveyed the premises in question in this action to W. Scott Taber, through whom defendant has acquired and now holds title to the premises of which he is in possession.

On November 22, 1912, Elsworth L. Striker died, leaving him surviving this plaintiff and three other children, his heirs at law, who would be entitled to the property if the conveyance thereof by said Elsworth L. Striker was for any reason invalid.

The question of law involved is a very narrow one, which does not appear to have ever been directly and definitely decided in this State. It is whether or not one of two executors, to whom a power of sale has been given, and both of whom have qualified and assumed the duties of the office, can alone validly execute the power of sale during the lifetime of the other executor who has been removed or discharged from his office as executor.

It was a conceded rule of the common law that, where a power in trust was given to several persons jointly, all must unite in the execution of the power, and if one had died, so that he could not join, the power could not be executed. There are exceptions to the rule, however, which have been incorporated into the statute law of the State.

By section 112 of title 2 of chapter 1 of part 2 of the Revised

Statutes (1 R. S. 735) it is provided that "Where a power is vested in several persons, all must unite in its execution; but if previous to such execution, one or more of such persons shall die, the power may be executed by the survivor or survivors." (See, also, Real Prop. Law [Gen. Laws, chap. 46; Laws of 1896, chap. 547], § 146; Real Prop. Law [Consol. Laws, chap. 50; Laws of 1909, chap. 52], § 166.) And by former section 2642 of the Code of Civil Procedure it is provided as follows: "And where any powers to sell, mortgage or lease real estate, or any interest therein, are given to executors as such, or as trustees, or as executors and trustees, and any of such persons named as executors *shall neglect to qualify*, then all sales, mortgages and leases under said powers made by the executors who shall qualify shall be equally valid as if the other executors or trustees had joined in such sale." (See Laws of 1883, chap. 401. Now Code Civ. Proc. § 2694, as added by Laws of 1914, chap. 443.)

Hence it is apparent that Elsworth L. Striker's deed as executor would have been a sufficient and valid exercise of the power of sale if George C. Miller had died before the date of the execution of the deed, or if he had never qualified as executor. The question is whether, for the purpose of validating an attempted exercise of the power by Striker, as executor, the resignation and discharge of Miller from his office as executor was equivalent to his entire neglect to qualify.

The section of the Code of Civil Procedure quoted above is not in derogation of, but is merely declaratory of the common law. By the statute 21 Henry VIII, chapter 4, it was provided that where part of the executors having power to sell refuse to assume administration and charge of the will a sale by those accepting and taking charge would be valid. This statute soon became incorporated into the common law, and although in terms limited to the case of executors to whom a power of sale was given, yet, because it was considered as a beneficial law, it was so construed as to apply to the case of lands devised to executors to be sold (Co. Litt. 113a; *Roseboom v. Mosher*, 2 Den. 61, 69), and it was early held in a case in which four executors had been appointed, and one refused to meddle with the will or sale, that a sale by the other three was

valid not only under the statute of Henry VIII, but at common law as well. (*Bonifaut* v. *Greenfield*, Cro. Eliz. 80.)

In *Matter of Bull* (45 Barb. 334) the late Mr. Justice DANIEL P. INGRAHAM, writing for the General Term in this department, dealing with a case in which an executor and trustee had been removed, expressed the opinion that the remaining executor could validly execute a power of sale. He said: "I am inclined to think the same rule applies to the removal of the executor by the surrogate. His power to act ceases in regard to the will and the administration of the estate. The power he obtains to execute the trust is given to him not by name, but as executor, and when removed as executor, his relation to the estate ceases."

There was another ground, however, upon which the order appealed from could be affirmed. The same view was expressed by the surrogate of New York county in *Matter of Bernstein* (3 Redf. 20, 25), but the decision of the question was not necessary to the matter involved.

In *Fleming* v. *Burnham* (100 N. Y. 1) the testator's will had named four executors, three of whom qualified and undertook the administration of the estate. Later two of them executed a deed, and the question arose as to the validity of their act. The Court of Appeals reversed an order requiring a purchaser at a judicial sale to take title, placing their decision upon the ground that there was no sufficient evidence that the executor, who had not joined in the deed, had ever renounced his executorship. There is a very plain intimation in the opinion, however, that if such evidence had been forthcoming, the deed by the two remaining acting executors would have been sufficient. Commenting upon the last two cases cited Mr. Chaplin in his work on Express Trusts and Powers (§ 637) writes as follows: "But in *Matter of Bernstein*, 3 Redf. 20 (25 *et seq.*), the ground is taken that where one resigns the others may execute the power. And such seems to be the necessary implication from the reasoning of the court in *Fleming* v. *Burnham*, 100 N. Y. 1 (10 *et seq.*), where, though renunciation was not there sufficiently established, the court assumed that the resignation of one who has once qualified, leaves the others competent to execute the power; and they say: 'If he qualified as executor,

and, with his co-executors, Thomas McKie and Andrew Stark, undertook the burden of the will, and was not subsequently discharged, or did not renounce his executorship, or refuse to act as executor, then it seems to be conceded that the power of sale was not well executed by the conveyance of his two co-executors, in which he did not join' (page 10), and in *Bunner* v. *Storm*, 1 Sandf. Ch. 357 (360), it was held that if one renounces the others may act, but it does not appear whether the 'renunciation' occurred after qualifying. In *Roseboom* v. *Mosher*, 2 Den. 61 (69), it was held that a neglect or refusal by one of two executors who had qualified, to take upon him the execution of the will, even though he should not formally resign, would enable the other to convey. See also *Sharp* v. *Pratt*, 15 Wend. 610," and he sums up what he considers as the established rule by the statement that "Where some of the executors renounce, the others succeed to the power. Where they resign after qualifying, the same result follows." (§ 638.)

It is true that Chancellor WALWORTH seems to have entertained a somewhat different view (*Matter of Van Wyck*, 1 Barb. Ch. 565), but in that case the question arose only incidentally, and the chancellor's remarks upon the subject were clearly *obiter dictum.*

The very question involved in the present case has been discussed with care in the Supreme Court of two of our sister States, to whose considered judgments we are accustomed to give great respect. In *Gould* v. *Mather* (104 Mass. 283) the power was given to an executor and executrix, both of whom qualified, and one of whom afterwards resigned. It was held that the remaining executrix might validly execute the power. In the course of his opinion Judge AMES, who wrote for the court, said: "Upon these grounds, it appears to us that the power is granted *ratione officii*, as one of the incidents of the executorship, and intended to secure the more convenient and successful administration of the trusts which the testator had in view; and that it is conferred upon the executors in their official capacity, and not as a mere personal trust in them as individuals. If so, and the vacancy had occurred in consequence of the decease of one of the executors, the power could well be executed by the survivor. The authorities cited by the

defendant's counsel are full and explicit upon this point. The rule seems to be the same also, if one of the executors had refused to accept the trust. *Bonifaut* v. *Greenfield*, Cro. Eliz. 80. ' If a man maketh his will, and maketh two executors, and willeth that his executors shall sell his land, and dieth, and one of them will not intermeddle, and the other executor taketh the administration upon him and payeth the debts, the sale made by him alone is good.' Perkins, § 545. It is difficult to see why a vacancy occasioned by the resignation of one of the two, which is simply a refusal to ' intermeddle ' or be concerned with the trust thereafter, can stand upon any different ground. The power seems to be not a mere naked authority, but is coupled with the trust of administration, as one of its incidents, and its exercise is a matter of duty and not of mere arbitrary discretion, whenever the necessity for its exercise may arise. ' A power is considered as coupled with an interest where the trustees have a right to the possession of the legal estate, or have a right in the subject over which the power is to be executed.' 2 Washb. Real Prop. (3rd Ed.), 473. The executors in the case before us appear to stand in that position."

In *Weimar* v. *Fath* (43 N. J. Law, 1) the Supreme Court of New Jersey had occasion to consider the same question. Chief Justice BEASLEY, who wrote the opinion, traced the common-law rule that the survivor of two or more executors or trustees might execute a power given to the executors as such, and then, coming to the question in hand, proceeded as follows: " And it was these grounds of doctrine, drawn from ancient sources, that led Sir Edward Sugden to the anticipation which has, in a great degree, been realized in the case above cited from the House of Lords, which he thus expresses: ' And the liberality of modern times will probably induce the courts to hold that in every case where the power is given to executors, as the office survives so may the power.'

" Assuming this to be the common-law rule, derived from the general principles of jurisprudence, it seems plain that, by force of that rule, the power to make the conveyance resided in the plaintiff in error, after the removal of the executrix

from office. In this will the power of sale is given to the 'executors,' and is not vested in individuals who are named; and, therefore, in the language of the authorities, as the office survived the authority survived. According to the theory above explained. when the testator said that his executors, when they should deem it advisable, might sell, the meaning was, that such discretionary power should be exercised by a class of officers; and the remaining executor represents that class. In such an instance, as in other like cases, the power is annexed to the office, and not to specified donees of the power."

Without discussing further the cases in which the question presented here has been referred to, it will suffice to say that upon both reason and authority, where power to sell is given to two or more executors or trustees *ratione officii*, and one resigns or is removed before the power has been fully executed, the remaining executors or trustees may validly execute the power.

This is of course upon the assumption that the power is given to the executors or trustees *ratione officii* as it clearly was in the present case. The power to sell is given in the 6th clause of the will and is in terms given to "my executors," and not individually to Striker and Miller. And the power is to be exercised "for the best interest of my estate," a matter which, in the nature of things, will lie within the cognizance of the executors as such. The nomination of Striker and Miller to be executors is made in a subsequent and separate clause. For these reasons the judgment appealed from is right and must be affirmed, with costs.

CLARKE, P. J., McLAUGHLIN, LAUGHLIN and DOWLING, JJ., concurred.

Judgment affirmed, with costs.